**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                No. CR 98-286-02 MV
                   (Las Cruces)

RAFAEL ENRIQUEZ-DOMINGUEZ,

   Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION TO DISMISS INDICTMENT**

  THIS MATTER came on for consideration of Defendant Enriquez-Dominguez's Motion to

Dismiss Indictment, filed May 19, 1998 (Docket No. 41). The Court has reviewed the motion, the

memoranda submitted by the parties and the relevant authorities. I find that the "law of the case"

doctrine precludes me from doing anything other than granting the motion.

  If I had been the first judge to address the issue in this case, I would have denied the motion

outright or at least deferred ruling on this decision because of its very significant impact, especially

on districts close to the border. I believe that the determinations necessary for imposing the severe

sanction of dismissal should be made in the context of the evidence received at trial. As discussed

below, I am not yet persuaded that the asserted "missing evidence" is sufficiently material, favorable,

and noncumulative to meet the standard for the dismissal sanction sought by Defendant. Moreover,

sanction of any kind is unwarranted if there is no reasonable likelihood that the testimony of the

deported aliens would have affected the jury's decision.

A four-count indictment charges Defendant Rafael Enriquez-Dominguez and Ramon Gonzalez-Gutierrez with two counts of bringing in illegal aliens for commercial advantage or profit, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and two counts of transporting illegal aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(I), (a)(1)(B)(I) and (a)(1)(A)(v)(I). Dismissal of the indictment is sought on the basis that the defendant's Fifth Amendment right to due process and Sixth Amendment right to compulsory process were violated by the government's deportation of certain illegal alien witnesses. Defendant contends that the deported individuals, not the ones detained as material witnesses, would have testified about their participation in a "car pool" as opposed to a smuggling scheme.

The government faces dual, and sometimes conflicting, obligations to turn over exculpatory evidence to an accused to assure a fair trial while complying with the congressional mandate to promptly deport illegal aliens. In light of these burdens, the Supreme Court has determined that a defendant cannot establish a violation of the right to compulsory process "merely by showing that deportation of the passengers deprived him of their testimony." United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982). "Sanctions may be imposed on the Government for deporting witnesses only if the criminal defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to the defense in ways not merely cumulative to the testimony of available witnesses." Id. at 873.

Defendant relies on United States v. Barajas-Chavez, 134 F.2d 1444 (10th Cir. 1998) to demonstrate both the asserted materiality and exculpability of the car pooling testimony.

> [Situations where] the defendant and the passengers are friends, family, or acquaintances simply pooling their resources during travel, fail to demonstrate an intent to transport undocumented aliens 'in furtherance of' their unlawful presence

> within the United States and therefore fall outside the range of activities prohibited
> by the transportation statute.

Id. at 1448.  It should be noted, however, that only recently the Tenth Circuit agreed to *en banc* reconsideration of the Barajas-Chavez decision.  Order of May 5, 1998, No. 97-2033.  The government argues that the precedential value of the decision is diminished by the acceptance of *en banc* review.

A virtually identical motion to dismiss was previously made by Enriquez-Dominguez's co-defendant in this same case which arose out of an indictment by the Grand Jury sitting in Las Cruces, New Mexico.  Pursuant to our policy of having a "Las Cruces duty judge" address all matters which are ripe in such cases during the month to which they are assigned, a visiting judge sitting by designation addressed the merits of co-defendant Gonzales-Gutierrez's motion to dismiss.  The visiting judge, the Honorable Douglas H. Hillman, Senior United States District Judge for the Western District of Michigan, entered an opinion and order granting the co-defendant's motion to dismiss on May 7, 1998.  Judge Hillman has since issued a clarification of his basis for that decision as well as an order denying reconsideration or a stay of his ruling.

I have fully reviewed Judge Hillman's thoughtful and careful analysis of the merits of the motion.  I have grave concerns that his decision was issued prematurely and effectively denied the government of the opportunity to demonstrate that the missing testimony was insufficiently favorable or material to warrant dismissal of the indictment.  The Supreme Court has noted that the determinations necessary for ruling on a motion such as this one are "best made in light of all of the evidence adduced at trial."  Valenzuela-Bernal, 458 U.S. at 874.

Judge Hillman determined that by deporting the illegal alien witnesses who made statements as to the existence of a car pool, the government irrevocably deprived the accused of his access to exculpatory testimony that was material and not cumulative.  He further concluded:

> there can be little doubt that the testimony of the deported aliens reasonably could affect the judgment of a trier of fact.  If the jury were to believe the testimony of the witnesses claiming the aliens were traveling together as part of a car pool, rather than those aliens claiming that defendant was paid to transport them, the jury would be obliged to find defendant not guilty.

Op. Granting Mot. to Dismiss at 8.  Respectfully, I disagree with this conclusion.

In Barajas-Chavez, the Tenth Circuit found that generalized evidence relating to the unlawful transportation arrangements of some of the illegal aliens cannot support a conviction as to the specific alien named in the indictment.

> Agent Alba testified Mr. Barajas-Chavez told him 'he was transporting [the illegal aliens] to the Denver, Colorado, area, and that he was charging them a fee of approximately $300 per person.'  These statements, even if accepted as true, do not indicate whether Mr. Lopez-Arrellano or Mr. Macias-Lopez, **the aliens actually named in the indictment**, were among those persons being charged for the transportation. The alleged statements do not indicate all of the truck's occupants were to be charged, and no specific evidence indicating Mr. Lopez-Arrellano or Mr. Macias-Lopez were 'charged' anything for the trip was presented at trial.

Barajas-Chavez, 134 F.2d at 1448 (emphasis added).  It seems to me that the corollary is also true--testimony that some of the aliens were participating in a car pool arrangement does not eliminate the possibility that others, specifically those named in the indictment, were traveling pursuant to an unlawful smuggling scheme.

Judge Hillman further found that testimony by the deported aliens cannot be cumulative because "no alien witnesses remain in the United States who **can** testify to defendant's theory of the case."  Yet, the defendants are free to cross-examine and may be able to elicit such testimony from

-4-

the two illegal aliens who are named in the indictment and have personal knowledge of the travel arrangements. In addition, testimony regarding an alleged car pool may be received from the agents who interrogated the deported alien witnesses. Defendants themselves were present and may opt to take the stand and testify regarding the alleged car pool.

In his opinion, Judge Hillman "question[ed] whether the government may require a defendant to testify by eliminating all other witnesses." Op. Granting Mot. to Dismiss at 7. This statement seems to indicate that the government has "compelled" the defendant to testify and thereby violated the defendant's Fifth Amendment privilege not to take the stand. Yet, a defendant's decision to "respon[d] to the lawful evidence does not rise to the level of compulsion." United States v. Weber, 437 F.2d 327, 335 (3rd Cir.1970). Indeed, the fact that "the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against self-incrimination." Williams v. Florida, 399 U.S. 78, 83-84 (1970); see also United States v. Carleo, 576 F.2d 846, 850 (10th Cir. 1978) (pressure to testify produced by a strong evidentiary case against the defendant "is not the kind of compulsion protected against by the Fifth Amendment").

In summary, I believe that Judge Hillman has overestimated the alleged materiality, exculpatory value and noncumulative nature of the deported aliens' testimony. "[C]ourts should afford some leeway for the fact that the defendant necessarily proffers a description of the [missing] material evidence rather than the evidence itself." Valenzuela-Bernal, 458 U.S. at 874. When "missing" evidence is examined in isolation and out of the context of all of the evidence, one cannot accurately assess whether the defendant has made a "plausible showing" that the testimony could

have affected the jury's decision.  In the absence of such a showing, sanctions are not to be imposed.

Id. at 873-74.

Although I feel strongly that Defendant's motion is of dubious merit, especially in context of all the evidence which may be presented at trial, I am keenly aware that the "law of the case" doctrine is looking me squarely in the eye.  Sound "law of the case" policy rules have been established to assure consistency and make efficient use of judicial resources.

> To be sure, unfettered reexamination would unduly encourage efforts to shop rulings from one judge to another, and might seem an undesirable denial of comity between colleagues.  A successor judge should feel more reluctant to reexamine rulings by a predecessor than his own earlier rulings.

18 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4478 at 794 (1998 Supp.).  The fear of future "judge shopping" identified above is diminished somewhat because the decision I would be reexamining was issued by a visiting judge who does not sit by designation on a regular basis in this district.

Nevertheless, the precedent set by reexamining the rulings of an earlier duty judge in later proceedings of the same case could seriously undermine confidence in the Las Cruces duty judge system.  More importantly, equal justice under the law is especially implicated in criminal cases because liberty interests are at stake.  Most importantly in the present circumstances, subjecting identically-situated defendants in the same case to inconsistent rulings by different judges smacks of unfairness.  The outcome would depend upon the order in which the co-defendants' motions are decided.

The law is clear that, as a matter of comity, I am to defer to Judge Hillman's decision on the issue absent extraordinary circumstances.  See Ute Indian Tribe of the Uintah and Ouray

-6-

Reservation v. State of Utah, 114 F.3d 1513, 1520-21 (10th Cir. 1997).  The ramifications to the government and to non-party alien witnesses flowing from the threat of a sanction such as dismissal cannot be overstated.  See Valenzuela-Bernal, 458 U.S. at 865 ("the detention of alien eyewitnesses imposes significant financial and physical burdens upon the government, not to mention the human cost to potential witnesses who are incarcerated though charged with no crime").  Although a close question, I hesitate to say that these immediate consequences represent extraordinary circumstances of the type which justify dispensing with the "law of the case" doctrine.

Any injustice which might arise by my adherence to the "law of the case" is tempered by the government's ability to take an appeal of this final decision to the Tenth Circuit Court of Appeals. Hopefully, the Tenth Circuit will find that the consequences to illegal aliens who may be required to be detained, and the impact on the government's ability to effectively and efficiently prosecute cases such as this, represent circumstances justifying expedited consideration of the issues.

Wherefore,

IT IS HEREBY ORDERED that Defendant Enriquez-Dominguez's Motion to Dismiss Indictment, filed May 19, 1998, is hereby **granted**.

DATED this 5th day of June, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff :              Jason Bowles, AUSA
                                      U. S. Attorney's Office
                                      District of New Mexico
                                      Las Cruces, New Mexico


Counsel for Defendant                Roseanne Camunez
Enriquez-Dominguez:                  Las Cruces, New Mexico


Counsel for Co-Defendant             Jane Greek, AFPD
Gonzales-Gutierrez                   Federal Public Defender's Office
                                      Las Cruces, New Mexico